UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALEXANDER HARRIS RUTLEDGE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANDREW M. SAUL, Commissioner ) <br> of the Social Security Administration, ) <br> ) <br> Defendant. ) | CAUSE NO. 1:19CV469-PPS |

## OPINION AND ORDER

Andrew Rutledge appeals the denial of disability benefits by the Commissioner of Social Security. Rutledge is a 31-year-old man with a history of mental health conditions including Bipolar Disorder and Asperger's Disorder, on which he based his application for Childhood Disability Benefits and Supplemental Security Income, alleging disability beginning January 1, 2008. Following an evidentiary hearing on June 4, 2018, an administrative law judge issued a decision on November 21, 2018, denying Rutledge's application for benefits.

The CDB claim required a demonstration of disability prior to age 22, or in Rutledge's case, by November 8, 2011. The ALJ noted that Rutledge provided no records for the period of time between April 2008 and July 2013, so that he failed to establish disability prior to November 8, 2011 and the CDB claim was denied. [AR at 16.][1] The ALJ also denied Rutledge's claim for Supplemental Security Income, finding

---

[1] The administrative record [AR] is found in the court record at docket entry 8, and consists of a total of 416 pages. I cite to the pages of this AR according to the Social Security Administration's Bates

that Rutledge "has not been under a disability within the meaning of the Social Security Act since April 24, 2017, the date the application was filed." [AR at 17.]

## Discussion

My review of the Commissioner's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick*, 775 F.3d at 935, quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's

---

stamp numbers rather than the court's Electronic Case Filing page number.

ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

A well-established five-step sequential evaluation process guides the disability analysis. 20 C.F.R. §416.920(a)(4). Step One requires a determination whether the claimant is engaging in "substantial gainful activity." §416.920(a)(4)(i) and (b). An individual who engages in substantial gainful activity is not disabled, no matter whether he has physical or mental impairments, even severe ones, as they do not limit him from working. *Id*. If the claimant is not engaging in SGA, the analysis proceeds to Step Two, at which the Commission considers whether the claimant has a medically determinable impairment, or a combination of such impairments, that is "severe," meaning significantly limits his ability to perform basic work activities. §416.920(a)(4)(ii) and (c). Severe impairments must also meet a "duration requirement" under §416.909 by lasting, or being expected to last, "for a continuous period of at least 12 months."

This is one of the relatively rare cases where the ALJ found at Step Two that Rutledge had no severe impairments meeting the regulatory definitions. [AR at 19.] Thus, the analysis ended there with a finding that he is not disabled. §416.920(a)(4)(ii) and (c). The ALJ did find that Rutledge had medically determinable impairments, but concluded that they did not meet the severity test of the regulations. Rutledge's impairments are bipolar disorder, anxiety disorder, autism/Asperger's disorder,

attention deficit hyperactivity disorder, and Tourette's syndrome (long in remission). [AR at 19.]

As the ALJ noted, the administrative record contained "no medical treatment records from April 2008 to July 2013" as well as a "lack of documentation of ongoing treatment." [AR at 24.] Prior to Rutledge's application for benefits on April 24, 2017, his most recent records of treatment were from the Bowen Center, for the period between July 31, 2014 and August 16, 2016. Rutledge's regular visits during that period do not support a determination of serious impairment from his Bipolar Disorder, Asperger's Disorder or ADHD, the diagnoses reflected in Bowen Center's records [AR at 367.] Instead, the records of those visits consistently reflect that, both with and later without medication, Rutledge's conditions were controlled. *See Office Treatment Records* of 7/31/14 [AR 344] ("very stable on his medication...happy and stable"); 9/25/14 [AR 349] ("Moods are good...NO depression."); 2/26/15 [AR 352] ("very stable right now"); 5/21/15 [AR 355] ("stable right now...feels that everything is really good for him"); 10/20/15 [AR 358] ("moods stable, able to do routine"); 5/10/16 [AR at 361] ("Moods: Doing ok. He took himself off of all medications since January 2016. Mom states he is doing very well. No ups and downs, does not get angry quick or hard to calm down, he is unemployed, looking for a job."); 8/16/2016 [AR at 364] ("he has been off his medication since January. [H]e states he is doing great...Mom states he is doing well off the medications. Able to do routine.") There are no treatment records dated between

4

this August 16, 2016 visit to Bowen Center and Rutledge's application for benefits on April 24, 2017.

Upon review of the entire record, including these medical records, the ALJ determined that Rutledge has only a mild limitation in each of the four broad areas of mental functioning that are set out in the disability regulations for evaluating mental disorders. These so-called "paragraph B" criteria are (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) and adapting or managing oneself. 20 C.F.R. §416.920a(c)(3). Findings of only mild limitations in each of these areas results in a conclusion that an impairment is not severe. §416.920a(d)(1).

Rutledge's challenge to the denial of benefits is that the ALJ erred in failing to find that any of his mental health impairments were severe, resulting in the conclusion at Step Two that Rutledge is not disabled. Three arguments are made in support of Rutledge's claim of error by the ALJ. Rutledge does not expressly challenge the ALJ's paragraph B findings of only mild limitation. But without saying so, his argument does focus on one of the four paragraph B criteria: Rutledge's ability to interact with others.

First, Rutledge contends that the ALJ "ignores that mental health impairments wax and wane" and "emphasizes the good times while minimizing Plaintiff's extensive mental health history." [DE 11 at 18.] To the contrary, the ALJ commits four pages of his decision [AR at 20-24] to review of the evidence, and in doing so acknowledges and describes Rutledge's periods of poor mental health and periods of stability. For

5

example, the ALJ noted that "as of July 2013...notes indicate no severe impairments for a few years, as his medications had been working well since adjustment a few years previously, or at least as of 2010." [AR at 21.] But the ALJ also observed that Rutledge's "mental status exam and his complaints in September 2013 reflect that he was not doing well at all." [*Id*.] Multiple medical visits through 2014 and into 2015 showed improvement however, with Rutledge's moods reported to be stable and his medical findings normal. [*Id*.] These records support the ALJ's conclusion that "claimant's difficulties from September 2013 had resolved within less than twelve months and by at least early and mid-2014," and "do not suggest disabling limitations of function for twelve months in duration." [*Id*.]

The ALJ further considered medical records from October 2015, May and August of 2016, which reflected that Rutledge's conditions were controlled and all objective medical findings were normal, good or appropriate. [*Id*. at 21-22.] Considering the entire (though relatively scant) medical record, the ALJ observed that "the record just does not establish an ongoing and severe impairment, imposing significant limitations of function, for twelve months in duration, with respect to the [SSI] claim or even the CDB II claim." [*Id*. at 22.] "The claimant bears the burden of producing medical evidence that supports [his] claims of disability. That means that the claimant bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time." *Eichstadt v. Astrue*, 534 F.3d 663, 665-668 (7th Cir. 2008).

6

Pressing his argument, Rutledge contends that "[t]he fact that mental health symptoms interfered with Plaintiff's job at H&R Block and that [he was unable] to interact with his supervisor to resolve problems, but instead had a meltdown and eventually quit provides solid evidence that Plaintiff's mental health impairments significantly limited [his]...ability to do basic work activities." [DE 11 at 18.] I question whether Rutledge's loss of temper on one occasion is adequate evidence to support a conclusion that he had mental health impairments that limited his ability to do basic work activities. Rutledge testified that he later quit the job because he (and other employees) were not being paid. [AR at 42.] But even if the incident were evidence of that significance, it is *one incident*, which falls well short of the durational requirement applicable to "severe" impairments, namely that they lasted for a period of at least 12 months. Rutledge himself testified that the "meltdown" with his boss was the first he'd had in years. [AR at 49.]

Rutledge next cites the opinion of the non-examining consultants who identified Rutledge's Bipolar Disorder and ADHD as severe [AR at 83, 93, 105, 116] and the report of the examining consultative psychologist [AR at 372] who identified what Rutledge calls "interaction problems" [DE 11 at 18-19]. Applicable Social Security regulations require the ALJ to evaluate every medical opinion and determine what weight to give to each, giving primary consideration to whether an opinion is sufficiently supported, and whether it is consistent with the record as a whole. 20 C.F.R. §404.1527c(a). My job is not to reweigh the evidence, including medical opinion evidence, but to determine

7

whether Rutledge demonstrates that the ALJ committed reversible error in his handling of that evidence.

I start with the more significant opinion of the examining consultative psychologist, Dan Boen, Ph.D., and the ALJ's handling of it. Dr. Boen's Medical Source Statement consisted of the following conclusions:

> Alexander can understand what Alexander was asked to do on a job. Alexander can remember what Alexander was asked to do on a job. Alexander would have trouble being able to concentrate on the job. Alexander would be able to stay on task. Alexander would have trouble being able to get along with coworkers. Alexander would be able to get along with a boss.

[AR at 372.] The ALJ gave Dr. Boen's opinion little weight. [AR at 24.] First, the ALJ noted that the opinion is internally inconsistent, finding that Rutledge would have trouble concentrating but would be able to stay on task. [*Id*.] Beyond that, the ALJ discounted the findings because they were based on the context of Rutledge having ceased treatment when in the past medication had successfully controlled his conditions. [*Id*.] Rutledge had acknowledged these facts to Dr. Boen. [AR at 369.] Lastly, the ALJ found the negative portions of Dr. Boen's opinion inconsistent with the medical record repeatedly reflecting stability in Rutledge's mood and mental health. [AR at 24.]

The ALJ offered a similar explanation for giving little weight to the opinions of medical consultants Ann Lovko, Ph.D. and Kenneth Neville, Ph.D., both of whom

8

classified Rutledge's Bipolar Disorder and ADHD as "severe." [AR at 23-24.] The ALJ explained that the opinions:

> are inconsistent with the evidence of the claimant's [disorders] with no medical treatment records from April 2008 to July 2013, with his academic success in the interval, and improved and stable moods with medication compliance including normal objective medical findings with normal concentration and attention, and the claimant's own reports of feeling stable, evidence of worsening symptoms in late 2013 followed by significant improvement in early and mid-2014, the objective medical findings and claimant's statements from the 2014 to 2016 treatment notes and the overall lack of ongoing treatment documented, all of which appear to indicate that all of his impairments are nonsevere, singularly and in combination, for twelve months in duration, during the period in question.

Packed into that rather run-on sentence are at least two conclusions. The first is that Lovko's and Neville's opinions on the severity of Rutledge's conditions are inconsistent with the medical record that reflects control of those conditions during periods of compliance with prescribed medication. The second is that the opinions are certainly not supported by periods for which no records of treatment are provided.

The ALJ's explanations adequately articulated how he considered Dr. Boen's, Dr. Lovko's and Dr. Neville's opinions and that he gave them little weight because they were insufficiently supported and inconsistent with the medical record overall. This is a proper application of the regulatory responsibility to weigh the opinions and explain sound reasons for the weight given to each. Rutledge demonstrates no error in this regard.

9

Finally, Rutledge contends that "[a] strong argument can be made that Asperger's diagnosed under the DSM-IV is inherently severe just like Major Depressive Disorder," citing *O'Connor-Spinner v. Colvin*, 832 F.3d 690 (7th Cir. 2016). [DE 11 at 19.] I question Rutledge's characterization of the holding in *O'Connor-Spinner*, which rather than find major depression "inherently" severe instead relies on "the plethora of evidence" in the case. *Id.* at 698. In any event, the Commissioner suitably responds to Rutledge's argument, citing 20 C.F.R. §416.921 for the proposition that a diagnosis alone does not establish the existence of an impairment and that it is the plaintiff's burden "to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting [his] capacity to work." *Weaver v. Berryhill*, 746 Fed.Appx. 574, 579 (7th Cir. 2018). [DE 12 at 8-9.] As my descriptions of the record have indicated, Rutledge failed to meet this evidentiary burden before the Commission. Even now Rutledge makes this conclusory argument without citing to any evidence in the record that supports a finding as to the severity of his Asperger's Disorder. [DE 11 at 19.]

## Conclusion

As is true of virtually every claimant for Social Security disability benefits, Andrew Rutledge has had significant health challenges. But "having been diagnosed with these impairments does not mean they imposed particular restrictions on [his] ability to work." *Weaver*, 746 Fed.Appx. at 578-79. To qualify for benefits, Rutledge needed to offer evidence that demonstrated how his impairments impacted his ability

10

to perform basic work activities. *Id*. at 579. He has failed to do this, due to an overall dearth of medical records, with the most recent medical evidence indicating that his impairments are under control.

It is also important to recognize that the scope of judicial review is limited. I find that the ALJ sufficiently articulated his findings and conclusions to permit meaningful judicial review, so that a remand is not warranted for lack of explanation. Beyond that, my role is not to determine whether the plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Hawkins v. Saul*, 2019 WL 6492491, at *1 (7th Cir. Dec. 3, 2019); *Eichstadt v. Astrue*, 534 F.3d 663, 665-666 (7th Cir. 2008). Applying these standards, I will affirm the denial of disability benefits.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Alexander Harris Rutledge's applications for Childhood Disability Benefits and Supplemental Security Income is AFFIRMED. The Clerk shall enter judgment in favor of defendant Commissioner and against plaintiff.

ENTERED: March 9, 2021.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT